UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 17-110-01JJM |
| | : | |
| AUDI E. DIAZ | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Audie E. Diaz is in violation of the terms of his supervised release and, if so, for recommended disposition.  In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, Defendant appeared initially on October 10, 2023, waived his right to a revocation hearing and admitted that the government has evidence sufficient to prove the violations by a preponderance of the evidence.  An order of detention issued as a detainer because Defendant was held without bail by the State.  Following a continuance at Defendant's request to allow him time to resolve the state charges underlying Violation No. 1, he appeared again on January 23, 2024, the parties presented sentencing arguments and Defendant exercised his right of allocution.

Based on Defendant's admissions and the following analysis, I recommend that the Court impose a sentence of twelve months of incarceration to run consecutive to the incarcerative portion of Defendant's State sentence.  I further recommend that the term of incarceration be followed by a twenty-fourth-month term of supervised release.  During the term of supervised release, I recommend that Defendant be subject to the following conditions:

> **1. The defendant shall participate in a program of substance abuse treatment (inpatient or outpatient), as directed and approved by the Probation Office.**

**2. The defendant shall participate in a program of substance abuse testing (up to 72 drug tests per year) as directed and approved by the Probation Office.**

**3. The defendant shall participate in a program of mental health treatment as directed and approved by the Probation Office.**

**4. The defendant shall contribute to the cost of all ordered treatment and testing based on ability to pay as determined by the probation officer.**

**5. The defendant shall permit the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, upon reasonable suspicion of a violation of supervision by possessing firearms, to conduct a search of the defendant's residence, automobile, and any other property under the defendant's control or ownership.**

I.      BACKGROUND

On May 19, 2023, the Court granted the Probation Office's petition for the issuance of a warrant charging Defendant with the following violations:

**Violation No. 1 Mandatory Condition: The defendant must not commit another federal, state or local crime.**

Mr. Diaz committed the following eight felony offenses on May 16, 2023, as evidenced by charges filed in Sixth Division District Court case number 62-23-03875. Counts 1 & 6: Possession of Firearm Prohibited – Person Convicted of Crime of Violence, Count 2: Possession of a Stolen Firearm, Count 3: License or Permit to Carry Concealed Pistol or Revolver, Counts 4 & 5: Manufacture/Delivery/Possession with Intent to Manufacture/Deliver a Controlled Substance 1st Offense, Counts 7 & 8: Carrying Dangerous Weapons/Substances Committing Crime of Violence 1st Offense.

**Violation No. 2 Mandatory Condition: The defendant must refrain from any unlawful use of a controlled substance. The defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.**

Mr. Diaz used fentanyl on July 8, 2022, and March 21, 2023, both as evidenced by positive drug test results.

Defendant was held by the State from his arrest on May 17, 2023. With the State charges still pending, Defendant appeared initially before the Court on October 10, 2023. At his initial

appearance, Defendant waived his right to a revocation hearing and admitted that the government had evidence sufficient to prove the violations by a preponderance of the evidence. Based on his admissions, I found Defendant guilty of violating the terms and conditions of his supervised release. At the October 2023 hearing, Defendant requested a continuance to resolve the State charges underlying Violation No. 1. On December 28, 2023, Defendant pleaded *nolo contendere* to State felony charges of possession with the intent to deliver fentanyl and possession with intent to deliver fentanyl and/or acetyl fentanyl when armed with, or having available, a nine-millimeter firearm; the remaining charges were dismissed. Defendant was sentenced by the State to eight years of incarceration, with eighteen months to serve and seventy-eight months suspended with probation for eight years. Defendant's counsel roughly estimates that Defendant is likely to complete the incarcerative portion of this State sentence in June 2024.

On January 23, 2024, the parties' sentencing recommendations and Defendant's allocution were presented to this Court.

**II.    APPLICABLE LAW**

Title 18 U.S.C. § 3583(e)(3) provides that the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond five years if the instant offense was a Class A felony, three years for a Class B felony, two years for a Class C or D felony, or one year for a Class E felony or a misdemeanor.

3

In this case, Defendant was on supervision for a Class C felony; therefore, he may not be required to serve more than two years imprisonment upon revocation.

Title 18 U.S.C. § 3583(e)(2) provides that if the Court finds that the defendant violated a condition of supervised release, the Court may extend the term of supervised release if less than the maximum term was previously imposed. In this case, the maximum term of supervised release is life; therefore, the term can be extended.

Title 18 U.S.C. § 3583(h) and § 7B1.3(g)(2) of the United States Sentencing Guidelines ("USSG") provide that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the authorized statutory maximum term of supervised release is life. The Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Section 7B1.1 of the USSG provides for three grades of violations (A, B and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) of the USSG provides that a Grade A violation constitutes conduct that is punishable by a term of imprisonment exceeding one year, and that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive

device, or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision. Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) states that upon a finding of a Grade C violation, the Court may revoke, extend or modify the conditions of supervision. In this case, Defendant has committed Grade A violations; therefore, the Court shall revoke supervision.

Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(1) states that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term. Should the Court find that the defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (a) a sentence of imprisonment; or (b) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e), provided that at least one half of the minimum term is satisfied by imprisonment. Neither provision applies to this matter.

Pursuant to § 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which

revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of confinement or detention may be converted to an equivalent period of imprisonment. There is no outstanding restitution, fine, confinement, home detention, or intermittent confinement.

Section 7B1.4(a) of the USSG provides that the Criminal History Category is the category applicable at the time the defendant was originally sentenced. In this instance, Defendant had a Criminal History Category of I at the time of sentencing.

Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range. In this case, Defendant committed a Grade A violation and has a Criminal History Category of I. Therefore, the applicable range of imprisonment for this violation is twelve to eighteen months.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

### III.   ANALYSIS

On April 12, 2019, Defendant pleaded guilty to conspiracy to distribute and possess with the intent to distribute fentanyl and cocaine and was sentenced to sixty months of incarceration followed by three years of supervised release. Supervised release commenced on January 13, 2022, with a projected expiration on January 12, 2025.

Supervision did not go well. Within six months, in July 2022, Defendant tested positive for fentanyl. On March 15, 2023, Defendant suffered an opioid overdose (Percocet) and was transported to South County Hospital where he was administered Narcan and treated for alcohol

intoxication. On March 21, 2023, Defendant again tested positive for fentanyl. The admitted use of fentanyl in July 2022 and March 2023 is the basis for Violation No. 2.[1]

Far more serious is Violation No. 1, based on Defendant's admitted conduct in May 2023. As described in Probation's report, on May 16, 2023, Providence Police officers approached Defendant and observed suspected narcotics in his left hand. As officers moved closer to Defendant, he handed an officer a clear plastic bag containing seven smaller bags of purple fentanyl and eight smaller bags of white fentanyl, a total of 23.5 grams of fentanyl. At Defendant's residence (where Defendant initially denied he was living), Providence Police found and seized a Taurus handgun with fifteen live rounds; a FN 9X19 handgun (active stolen); three more bags of fentanyl weighing 27.7 grams; $1,720 in cash; paperwork/photos of Defendant; two digital scales; and bagging material.

Based on this troubling and extremely dangerous conduct committed in defiance of the Court and its conditions, the government requests that I recommend twelve months of incarceration to run <u>consecutive</u> to the State court incarcerative sentence followed by twenty-four months of supervised release. Such a sentence falls at the bottom of the applicable guidelines range and is consistent with the appliable guidelines principle:

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served <u>consecutively</u> to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

---

[1] In support of his argument that Defendant suffers from serious substance addictions, Defendant's counsel advised the Court that, on April 14, 2023, Defendant was arrested and charged by the North Providence Police Department for driving under the influence of alcohol and possession of marijuana. However, Defendant conceded that the use of alcohol in this instance is not confirmed because Defendant refused a breathalyzer test. Further, the charge of driving while impaired was dismissed.

USSG § 7B1.3(f) (emphasis supplied); see <u>United States v. Lopez</u>, 985 F. Supp. 59, 65–66 (D.R.I. 1997) (punishment for a separate state offense serves a *different* purpose than punishment for the violation of federal supervised release). The government argues that such a relatively harsh sanction is necessary because the Court is not facing only Defendant's personal use of illegal drugs due to addictive disease (which Probation tried to address with treatment). Rather, this case presents a Defendant who returned to the same criminal conduct for which he was originally convicted – this time not only dealing in deadly fentanyl, but also possessing two guns, one loaded, in connection with that activity. Such behavior not only places Defendant at risk but also seriously endangers the community. The government contends that Defendant's violations are materially different from possession of a controlled substance by an individual with addictive disease who has experienced a relapse. Defendant's conduct – resuming the business of conducting a drug sales operation from his home – amounts to a significant breach of the Court's trust and, consistent with the applicable guidelines, merits a punishment that is distinct from the punishment he received from the State.

In rebuttal, Defendant contends that the fentanyl seized by Providence Police in May of 2023 was a relatively small amount, measured in "grams not ounces," susceptible of interpretation as for personal use, conduct caused by his addictions. Defendant argues that a consecutive sentence is not merited because he has a substance abuse problem (involving opioids and alcohol), which is a disease and not a "moral failing." He asks the Court to impose a one-year <u>concurrent</u> sentence, retroactive to his original arrest in May 2023, or in the alternative, a seven-month term of incarceration retroactive to October 10, 2023. Such a sentence would likely result in his release back on supervision at the same time as the expected termination of the incarcerative portion of the State sentence. Effectively, Defendant's proposal would result in

8

almost no consequences for his admitted violations. On allocution, Defendant apologized to the Court and to his family. He stated that he would like to return to society, his family and son and procure proper treatment for addiction.

I do not adopt Defendant's perspective that his admitted conduct is nothing more than a relapse by an individual who needs not more jail, but more treatment for addictive disease. Defendant's argument in support of that proposition ignores that the facts presented here, which unambiguously establish the operation of a business of selling a deadly drug, including the digital scales, the cash, the baggies, and the bagged drugs found on arrest, coupled with Defendant's admissions to dealing (not simple possession) in this Court and in the State. The fact that this drug dealing is a resumption of the precise conduct on which his original sentence was based, this time supported by guns, compels the finding that supervision has not kept the community safe from Defendant's conduct, nor has it deterred Defendant from breaching the Court's trust by defiantly ignoring the Court's conditions. I find that these circumstances require a serious consequence, not one that merely piggy-backs the punishment imposed by the State.

To sufficiently address the breach of trust and protection of the community (including the risk to Defendant himself of overdose and exacerbation of his condition), as well as to deter Defendant from continuing this conduct, I recommend a low-end guidelines-based sentence as the government recommends – twelve months of incarceration to be served <u>consecutive</u> to the incarcerative sentence imposed by the State. Following Defendant's release, I recommend that the Court impose a term of twenty-four months of supervision, with the same conditions as before. Such a two-year period of supervision is similar to (exceeding by just four months) the term of supervision that was remaining when Defendant was arrested in May 2023.

IV. **CONCLUSION**

After considering the appropriate factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend the Court impose a sentence of twelve months of incarceration to run consecutive to the incarcerative portion of Defendant's State sentence. I further recommend that the term of incarceration be followed by a twenty-fourth-month term of supervised release. During the term of supervised release, I recommend that Defendant be subject to the following conditions:

    1. The defendant shall participate in a program of substance abuse treatment (inpatient or outpatient), as directed and approved by the Probation Office.

    2. The defendant shall participate in a program of substance abuse testing (up to 72 drug tests per year) as directed and approved by the Probation Office.

    3. The defendant shall participate in a program of mental health treatment as directed and approved by the Probation Office.

    4. The defendant shall contribute to the cost of all ordered treatment and testing based on ability to pay as determined by the probation officer.

    5. The defendant shall permit the probation officer, who may be accompanied by either local, state, or federal law enforcement authorities, upon reasonable suspicion of a violation of supervision by possessing firearms, to conduct a search of the defendant's residence, automobile, and any other property under the defendant's control or ownership.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge

January 26, 2024